26 cr 94 NEB

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | **INFORMATION** |
| Plaintiff, | 18 U.S.C. § 1349 |
| | 18 U.S.C. § 982 |
| v. | 28 U.S.C. § 2461 |
| CYNTHIA ALLEN, | |
| Defendant. | |

THE UNITED STATES ATTORNEY CHARGES THAT:

At times relevant to this Information:

1.      Medicaid was a federal and state health care program that provided benefits to individuals and families who met specified financial and other eligibility requirements, and certain other individuals who lacked adequate resources to pay for medical care. The Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services, was responsible for overseeing Medicaid in participating states, including Minnesota. Individuals who received benefits under Medicaid were referred to as "beneficiaries."

2.      Medicaid was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

3.      Medicaid was a health and long-term care coverage program jointly financed by states and the federal government pursuant to the Social Security Act of 1965. Each state established and administered its own Medicaid program and

SCANNED
MAY 13 2026
U.S. DISTRICT COURT MPLS

*United States v. Allen*

determined the type, amount, duration, and scope of services covered within broad federal guidelines.

4.     Medicaid covered the costs of medical services and products ranging from routine preventive medical care for children to institutional care for the elderly and disabled. Service providers were authorized to submit claims to Medicaid only for services they actually rendered and were required to maintain patient records verifying the provision of services. By submitting a claim, the provider certified, among other things, that the services were rendered to the patient, medically necessary, and not rendered as a result of kickbacks or bribes.

5.     Medicaid in Minnesota was administered by the Minnesota Department of Human Services ("DHS"). Beginning in or around July 2020, DHS began operating the Housing Stabilization Services ("HSS") program ("the Program"), which was funded through the state's Medicaid program. The Program was designed to help seniors and people with disabilities, including mental illness and substance use disorders, find and maintain housing.

6.     The defendant devised and carried out a scheme to defraud the Program. Rather than provide such help, the defendant obtained and misappropriated millions of dollars in Program funds that were intended as reimbursements for services provided to those people.

### A.     Background on Minnesota's HSS Program

7.     The Program permitted reimbursements for four principal kinds of services:

2

*United States v. Allen*

(a) Housing consultation, during which a consultant (like a social worker or nurse) helped a beneficiary complete a DHS form called a Person-Centered, Housing Focused Plan. The form required minimal information. Consultants could bill Medicaid approximately $174 for a consulting session.

(b) Housing transition services, during which a provider helped a beneficiary plan for, find, and move into housing. Providers could bill approximately $68 per hour of transition services provided.

(c) Housing sustaining services, during which a provider helped a beneficiary keep their housing after they had moved in (including through behavioral management of the beneficiary). Providers could bill approximately $68 per hour of sustaining services provided.

(d) Moving expenses of up to $3,000, subject to conditions.

8.      The Program had the following limited requirements to enroll as a provider: (i) be at least 18 years old, (ii) submit enrollment application to DHS, (iii) undergo a background check, and (iv) complete approximately five hours of online training videos.

9.      Similarly, the Program had limited requirements to enroll as a beneficiary: (i) be at least 18 years old, (ii) have Medicaid coverage, (iii) have a documented disability or "disabling condition," and (iv) be experiencing housing instability. To receive billable services, a beneficiary meeting these requirements was required to complete a form called a Person-Centered Housing Focused Plan, detailing their housing challenges and needs. Once submitted, the beneficiary could enroll with a provider, and the provider could start billing the Program.

10.     To bill, a provider submitted the names of the beneficiary serviced, the type of billable service provided, and the number of hours worked.

*United States v. Allen*

### B.    The Defendant and Her Role

11.    The defendant, CYNTHIA ALLEN, lived in Philadelphia, Pennsylvania. In or around December 2021, an individual known to the defendant informed ALLEN and others that the Minnesota HSS Program was a lucrative opportunity.

12.    ALLEN and at least four of her associates each decided to become Minnesota HSS providers, despite all living outside of Minnesota.

13.    In or around February 2022, ALLEN and her associates each filed corporate registration paperwork with the Minnesota Secretary of State. Each then submitted paperwork to enroll in the HSS Program through their newly registered Minnesota companies. And each of those companies then billed the HSS Program for thousands of hours of purported services.

14.    Specifically, in or around February 2022, ALLEN registered Cynthia Allen Servicing Company LLC ("the Company") in Minnesota. Through the Company, ALLEN participated in the Program as a service provider. In enrolling as a provider with DHS, ALLEN certified she would not submit false or fraudulent claims. She also completed mandatory training setting forth the services for which she was permitted to submit claims. ALLEN, by and through the Company, began submitting claims to the Program in or around August 2022.

15.    In addition, ALLEN assisted in the operation of Company 1, owned by Co-Conspirator 1. Company 1 was registered in Minnesota by Co-Conspirator 1 in or around February 2022 and was enrolled as a HSS provider. Co-Conspirator 1, by and through Company 1, began submitting claims to the Program in or around August 2022.

4

*United States v. Allen*

### C.    The Conspiracy to Defraud the HSS Program

16.    From in or around February 2022 through in or around July 2025, in the State and District of Minnesota, and elsewhere, the defendant, CYNTHIA ALLEN, Co-Conspirator 1, and others, did knowingly devise and participate in a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicaid, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services.

17.    The purpose of the conspiracy was to fraudulently obtain millions of dollars in Program funds by causing the submission of fake and inflated bills. As Program providers, ALLEN and her co-conspirators were responsible for providing Program-eligible housing services to people in need. However, in furtherance of the scheme, ALLEN and her co-conspirators caused the submission of false claims that significantly overrepresented the hours of services they provided. In so doing, ALLEN and her co-conspirators received HSS Program funds that substantially exceeded the services that were provided.

18.    As part of the scheme, ALLEN and her co-conspirators repeatedly flew from Philadelphia to Minneapolis for the purpose of recruiting beneficiaries for their companies. They then used the beneficiary names and identifying information that were acquired to bill the HSS Program far in excess of the services actually provided.

5

*United States v. Allen*

19.    Ultimately, ALLEN and her co-conspirators, by and through the Company and Company 1, billed Minnesota Medicaid approximately $3,504,307 for HSS services purportedly provided to approximately 350 beneficiaries when those services were, in fact, not provided as represented. Minnesota Medicaid paid ALLEN and her co-conspirators approximately $3,476,244 based on those false and fraudulent claims.

## Count 1
(Conspiracy to Commit Health Care Fraud)

20.    Paragraphs 1 through 19 are incorporated herein.

21.    From in or around February 2022 through in or about July 2025, in the State and District of Minnesota, and elsewhere, CYNTHIA ALLEN, Co-Conspirator 1, and others, did voluntarily and knowingly combine, conspire, confederate, and agree with others, known and unknown to the United States, to violate Title 18, United States Code, Section 1347, that is, to knowingly and willfully execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicaid, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services.

All in violation of Title 18, United States Code, Section 1349.

6

*United States v. Allen*

## FORFEITURE ALLEGATIONS
### (18 U.S.C. § 982(a)(7))

22.    The allegations contained in Count 1 of this Information are incorporated by reference as if set forth fully herein for the purpose of alleging forfeiture against defendant CYNTHIA ALLEN, pursuant to the provisions of Title 18, United States Code, Section 982.

23.    Pursuant to Title 18, United States Code, Section 982(a)(7), upon being convicted of the crimes charged in Count 1 of this Information, the convicted defendant shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense.

24.    Substitute Assets:  If the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

      a.  cannot be located upon the exercise of due diligence;

      b.  has been transferred or sold to, or deposited with, a third party;

      c.  has been placed beyond the jurisdiction of the Court;

      d.  has been substantially diminished in value; or

      e.  has been commingled with other property that cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) as incorporated by Title 18, United States Code, Section 982(b), to seek to forfeit any other property of CYNTHIA ALLEN, up to the value of such property.

*United States v. Allen*

Dated: May 12, 2026

DANIEL N. ROSEN
United States Attorney

*/s/ Matthew Murphy*
MATTHEW C. MURPHY
Assistant U.S. Attorney
600 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
Office: (612) 253-0984
MN Atty ID: 0391948
Matthew.murphy2@usdoj.gov

LORINDA LARYEA
Chief
Criminal Division, Fraud Section
U.S. Department of Justice

*/s/ Brant Cook*
BRANT COOK
Trial Attorney
SHANKAR RAMAMURTHY
Assistant Chief
Criminal Division, Fraud Section
U.S. Department of Justice
211 W. Fort Street, Suite 2001
Detroit, MI 48226
Phone: (202) 748-1224
Email: brant.cook@usdoj.gov